# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RONNEL LEON COATS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 08-CV-647-TLW ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION

Plaintiff Ronnel Leon Coats seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance and supplemental security income benefits under Title II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416 (i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1]  [Dkt. # 9].

## Introduction

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 404.1512(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden,

---

[1] Plaintiff's application for disability insurance benefits and SSI was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") John W. Belcher was held on July 10, 2008. [R.267]. By decision dated August 25, 2008, the ALJ entered the findings that are the subject of this appeal. [R. 14]. The Appeals Council denied plaintiff's request for review on October 16, 2008. [R. 6]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

plaintiff must provide medical evidence of an impairment and the severity of the impairment during the time of his alleged disability. 20 C.F.R. § 404.1512(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a).

## Background

Plaintiff was born on September 13, 1966, and was 41 years old on the date of the hearing before the ALJ. [R. 270]. Plaintiff graduated from high school in 1984 and received vocational training as a project manager in 1998. [R. 272-73]. Plaintiff is divorced and living with his two sons in a trailer on a farm owned by his father. Plaintiff's father and brother also live and have homes located on the farm. [R. 271]. Plaintiff's work history includes welder, crane operator, mechanic and cost estimator. [R. 80]. His former employers include Ron's Welding & Fabrication, Inc. from 1984 to 1986, Operating Engineers Union from 1986 to 2000, and Glenmar Construction from 2000 to 2001. [R. 80].

Plaintiff has a history of multiple vehicle accidents causing bodily injury, and injuries received from other activities. He sustained a meniscus tear to his left knee in 1985; injury to his back in 1985; torn cartilage to his right knee in 1986; fractured pelvic and fractured right hand in 1992; rotator cuff tear and neck strain in 1996; head injury 1996; and a second fracture to his right

hand in 1996.[2] In 1985, he underwent arthroscopic surgery for the meniscus tear to the left knee, and in 1986 he had reconstructive surgery to the right knee. In 1997, he had arthroscopic surgery to repair the rotator cuff and follow-up surgery in 1999, to relieve compression to the rotator cuff tendons. [R. 83-84, 105-106]. Plaintiff contends that he has had migraine headaches since 1996, as a result of these accidents. [R. 118]. He has twice been arrested for driving under the influence of alcohol, but he denies consuming alcoholic beverages and denies any past alcohol problem. [R. 157].

Plaintiff claims April 1, 2002, as the onset date of his disability. [R. 46]. He alleges an inability to work since 2002, because of injuries received from the accidents stated above. [R. 261]. He claims the migraine headaches cause him to be confrontational around people. He further claims to have taken medication for depression for the past two years. He also claims that his left shoulder has scaring and nerve damage, which limits the function of his left arm. [R. 273-277].

In assessing plaintiff's qualification for disability benefits, the ALJ found that plaintiff has not engaged in any substantial gainful activity since April 1, 2002; he met the insured status requirements through December 31, 2006; his severe impairments are left shoulder injury, migraine headaches, bilateral knee injuries and depression; however, his right hand injury is nonsevere because x-rays show no acute fractures or dislocations. He does not have an impairment or combination of impairments that meet or medically equal the listing impairments; he is unable to perform his past relevant work as a heavy equipment operator and a project manager because the

---

[2] It is unclear from the record whether plaintiff fell from a crane on two separate occasions and sustained the same injury on each occasion, or whether plaintiff reported different dates for a single injury. The record shows that in 2000 and in 2005 plaintiff claimed he fell from a crane in September 1992 and in September 2002 respectively, and in both instances he claimed he sustained a pelvic fracture and injury to his lower back. [Cf. R. 83 with R.106].

equipment operator was medium exertion work that was performed at a very heavy exertional level; and the project manager was sedentary work but his mental limitations prevent him from returning to that job. He retains the residual functional capacity ("RFC") to perform sedentary work, with several enumerated physical and social limitations. [R. 18]. The ALJ concluded plaintiff was not disabled within the meaning of the SSA and found that he could perform sedentary work in a socially restricted area, such as a maintenance dispatcher, assignment clerk, and radio dispatcher, both positions existing in significant numbers in the national economy. [R. 21]. This finding was the fifth in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[3]

The ALJ found that his physical RFC assessment of plaintiff was consistent with the RFC assessment by agency medical consultant, Thurma Fiegel, M.D. [R. 175-182], the RFC assessment and examination by the internal medicine consultative physician David Wiegman, M.D. [R. 150-156], the medical source statement prepared by agency physician Subramananiam Krishnamurthi, M.D., and the psychological evaluation by agency consultant Minor Gordon, Ph.D. [R. 157-160], but inconsistent with the RFC assessments and medical statements of plaintiff's treating physician, Dominic Totani, D.O., dated December 8, 2006. [R. 227-250]. See [R. 20].

---

[3] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

**Issues**

Plaintiff raises two issues on appeal:

(1)   Whether the ALJ propounded a hypothetical question to the vocational expert that included less restrictive limitations than the ALJ ultimately included in his RFC assessment.

(2)   Whether the ALJ applied the correct legal standard in rejecting the opinion of plaintiff's treating physician, Dr. Totani.

**Discussion**

The Court's role in reviewing the decision of the Commissioner under 42 U.S.C.§ 405 (g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996); and Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). The Court is to consider whether the ALJ followed the "specific rules of law that must be followed in weighing particular types of evidence in disability cases," but the Court will not reweigh the evidence or substitute its judgment for that of the ALJ. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

Plaintiff first challenges the hypothetical question the ALJ propounded to the vocational expert during the hearing, calling into question the validity of the vocational expert's determination of jobs in the national economy that plaintiff was capable of performing and the ALJ's finding that

plaintiff is not disabled. Specifically, plaintiff contends the hypothetical the ALJ posed to the vocational expert involved "light work" not "sedentary work" with additional limitations. [Dkt. # 13 at 4]. The Court finds no merit to this contention.

>The ALJ posed the following hypothetical question to the vocational expert:
>
>I want you to assume an individual who is 41 years old with a high school education and training as indicated in the testimony. . . . This individual could lift no more than 20 pounds occasionally, 10 pounds frequently. No more than 10 pounds with the left arm. Pushing and pulling would need to be consistent with lifting and carrying limitations. The person could stand or walk for 2 hours out of an 8-hour day, sit for 6 hours out of an 8-hour day, provided he could change positions as needed. This person could occasionally climb stairs, ladders, ropes and scaffolding. Could occasionally balance, bend or stoop, kneel, crouch, crawl. He could reach above the shoulder, above the head with his left hand occasionally. He could occasionally reach in the other direction with his left arm, but again, only occasional. I find no reason to limit the right shoulder. The individual could occasionally do gripping with the left hand. He could do no power gripping with the left hand. He would be limited to moderately complex tasks with no intense interpersonal contact with co-workers, supervisors or the public. Due to his medication, I would also limit him to not doing safety operations or doing jobs that require hypervigilence. And also as a result of medications, I do not want him working at heights, unprotected heights or around fast or dangerous machinery.

[R. 295-96]. In his decision the ALJ found that plaintiff has the RFC to:

>[P]erform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except can lift/carry no more than 10 pounds with the left arm; can push/pull no more than 10 pounds; must be able to change positions as needed; can occasionally climb stairs, balance, bend/stoop, crouch, kneel, crawl, and reach all directions with left arm/hand; cannot climb ropes, ladders, or scaffolds; must avoid hazardous machinery and unprotected heights; can occasionally grip with left hand and should avoid power gripping with left hand. The claimant can do moderately complex work, requires no safety operations and hypervigilence, and would need to avoid intense interpersonal contact with co-workers, supervisors, and public.

[R. 18]. As shown in his decision, the ALJ determined that plaintiff could perform "sedentary work as defined in §§ 404.1567(b) and 416.967(b)." However, the cited subsection (b) defines "light work" rather than "sedentary work" the latter which is defined in subsection (a) of §§ 404.1567 and

416.967. The citation to subsection (b) clearly appears to be scrivener's error, and therefore harmless. In setting forth specific limitations, the ALJ found that plaintiff could perform less than a full range of sedentary work. The limitations he outlined accommodated plaintiff's severe impairments, including his left shoulder, knees, and confrontational demeanor.

Under the agency regulations, to perform sedentary work, a person must generally be able to walk and/or stand for at least two hours of an 8-hour workday and sit about six hours of an 8-hour workday. See Social Security Ruling 96-9p, 1996 WL 374185, at 3 (July 2, 1996). Based on the above comparison, it is evident that the only difference between the ALJ's RFC and the hypothetical question was that the hypothetical included lifting up to 20 pounds with his right, uninjured arm, which is a weight restriction assigned to "light work." Since the vocational expert only enumerated sedentary jobs, and the ALJ determined that plaintiff could perform only sedentary work (with additional limitations), the ALJ properly relied on the vocational expert in finding that the plaintiff was capable of returning to the work force to perform such sedentary work as a maintenance dispatcher, assignment clerk, or radio dispatcher. The Court finds that the ALJ's hypothetical question was consistent with, and did not conflict with, the ALJ's findings as to plaintiff's RFC.

As his second assignment of error, plaintiff contends the ALJ failed to apply the proper legal standard in disregarding the opinion of plaintiff's treating physician Dr. Totani.

The proper procedure for evaluating the opinion of a treating physician is well established. "Under the regulations, the agency rulings, and our case law, an ALJ must give good reason in the notice of determination or decision for the weight assigned to a treating physician's opinion." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527 (d)(2) and Social Security Ruling 96-2p, 1996 WL 374188 at 5). "The type of opinion typically accorded

controlling weight concerns the 'nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.'" Lopez v. Barnhart, 183 Fed. Appx. 825, 827 (10th Cir. 2006) (unpublished).[4]  Generally, an ALJ should give more weight to opinions from treating physicians. Watkins, 350 F.3D at 1300 (citing 20 C.F.R. § 404.1527(d)(2)). However, it is error to give the opinion controlling weight simply because it is provided by a treating source. Id.

In determining whether the opinion should be given controlling authority, the analysis is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Id. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Second, if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, it is entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. §§ 404.1527 and 416.927. Those factors are:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and

---

[4] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

> the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)).  The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  Id. (citing 20 C.F.R. § 404.1527(d)(2)).

Third, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)).  The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight.  Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished).

Plaintiff contends the ALJ applied "no legal standard" in disregarding the treating physician's opinions and, as such, the ALJ's decision must be reversed.  [Dkt. # 13 at 5].  The Court disagrees.

The ALJ found that plaintiff's left shoulder injury, migraine headaches, knee injuries and depression are severe impairments.  Thus, Dr. Totani's opinion was not entirely rejected.  Rather, the ALJ accepted his medical diagnosis, at least in part, but rejected his opinion concerning the physical and mental limitations that plaintiff's impairments imposed.  The ALJ relied on Section 1.00 in the Listing of Impairments in 20 C.F R. pt. 404, subpt B, App. 1, in finding that none of plaintiff's physical impairments met the requirements of any specific listing and his mental depression did not medically equal the criteria for listing 12.04.  [R. 17].

In following proper procedure the ALJ next determined that Dr. Totani's opinion was not entitled to controlling weight because there were discrepancies between the information in the RFC

questionnaires completed by Dr. Totani and his medical records.[5] This finding is supported by the evidence. For example, in one of the questionnaires Dr. Totani was asked the "frequency and length of contact," with plaintiff. Dr. Totani responded "8/03 every 90 days . . ." with diagnosis "Chronic neck/L shoulder pain." [R. 231]. In another questionnaire regarding plaintiff's lumbar spine, Dr. Totani responded to the same question as "since 4/06." [R. 236]. However, plaintiff's medical records indicate that Dr. Totani was not plaintiff's treating physician in 2003 or 2004. Rather, the evidence is that from August 12, 2003 until December 3, 2007, plaintiff's treating physician was Dr. Schuyler Steelberg. [R. 89-102, 190-201]. The evidence is that plaintiff's initial encounter with Dr. Totani occurred on April 28, 2006. On that date, Dr. Totani recorded in his notes that plaintiff advised that he was "applying for full disability benefits" as a result of his job related and motor vehicle accident related injuries. [R. 130]. Dr. Totani recorded plaintiff's statement of the various accidents he had been involved in and the injuries he purportedly received. The treatment notes show that Dr. Totani encountered plaintiff on December 8, 2006, and at that time, plaintiff requested that Dr. Totani complete the disability papers and questionnaires which are included in the administrative record. Aside from requesting him to complete the forms, Dr. Totani noted that plaintiff had "no new problems or concerns." [R. 147]. Apparently, Dr. Totani completed his RFC assessment and the questionnaires for plaintiff on that same date, December 8, 2006. [R. 227-240]. The record also shows plaintiff was a patient of Dr. Totani for approximately two years, from March 23, 2006 to April 16, 2008. [R. 124-131, 141-149, 205-230]. Dr. Totani's treatment records consist

---

[5] There were other forms in the record which were hand printed and unsigned. Because the author of the forms was not identified, the ALJ properly found that those forms should not be given any weight.

10

primarily of plaintiff's subjective statements of pain and re-fills of prescription medications. His records do not include relevant medically acceptable clinical or laboratory diagnostic tests. Dr. Totani's RFC assessment and answers to questionnaires consist solely of boxes checked on the Commissioner's forms to indicate his conclusions as to plaintiff's physical limitations. The Tenth Circuit has held that "[s]uch evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." Frey v. Bowen, 816 F.2d 508, 514 (10th Cir, 1987). Thus, the Court finds that substantial evidence supports the ALJ's finding that Dr. Totani's opinion was not entitled to controlling weight.

Second, the ALJ found that Dr. Totani's opinion was inconsistent with other substantial evidence in the record. The ALJ cited objective medical evidence which was inconsistent with the opinion of Dr. Totani. He found:

> In terms of the claimant's alleged shoulder injury and pain. The injury was to the left shoulder and the claimant is right hand dominant. In the medical arbiter examination on September 12, 2000, by Danielle L. Erb, M.D.; her opinion was that he had moderate restriction of the following left shoulder motion; forward elevation and abduction, backward elevation, internal rotation, and abduction are mildly impaired. There was a slight decrease of muscle strength due to the range of motion loss and pain. He has partial loss of ability to repetitively use the shoulder (Exhibit 1F). In the consultative examination on March 24, 2007, Dr. Wiegman stated that the claimant's left arm strength was slightly decreased at 4/5 and grip strength was 3/5 (Exhibit 10F, page 2). As far as the claimant's back is concerned, he does have decreased range of motion with pain. However; straight leg raising was negative and was able to toe and heel walk separately (Exhibit 10F, pages 2 and 3). With the claimant's neck, he has decreased extension of only about 30 degrees. He did have pain but no joint swelling, erythema, effusion, or deformities were noted (Exhibit 10F, page 2).
>
> The claimant also stated that he has problems with his knees. There have been no recent complaints concerning his knees and there was no reduced range of motion in the consultative examination (Exhibit 10F). The claimant stated that he has regular migraine headaches. He has been treated for them and does have medication. However, there has not been any diagnostic testing to verify this diagnosis. In

> addition, the claimant suffers from depression. In the psychological evaluation on May 9, 2007, he was diagnosed with mild depression secondary to his general medical condition. Dr. Gordon opines that the claimant's depression should not preclude him from gainful employment.

[R. 19-20]. Under the regulations, at this step, Dr. Totani's opinion was not entitled to "controlling weight," and the ALJ was obligated to determine whether Dr. Totani's opinion was entitled to deference. In this regard, the ALJ found some discrepancies between the information Dr. Totani provided on the agency forms and his medical records. The ALJ also found that several of the forms Dr. Totani purportedly completed were not signed. In not giving "much weight" to Dr. Totani's opinion, the ALJ found that his opinion was not supported by relevant evidence and, except for the opinion of Kenneth Trinidad, D.O., was inconsistent with the record as a whole. The ALJ found:

> As for the opinion evidence, the residual functional capacity assessment completed by State agency rated the claimant at sedentary level of exertion with a few reductions for the left shoulder and hand. This opinion is given considerable weight. (Exhibit 13F). The internal medical consultant examination is also given a lot of weight. The doctor did review the records and examine the claimant (Exhibit 10F). The consultative examination from 2005 is also given considerable weight. The findings are similar to the exam performed two years later (Exhibit 6F). The interrogatory by Dr. Krishnamurthi is also given considerable weight. His findings were consistent with the medical records. His medical source statement rated the claimant also at the sedentary level with similar exceptions as the one listed above (Exhibit 14F and 15F).

[R. 20]. The ALJ did not specifically address the length of the treatment relationship or the nature and extent of the treatment, but the ALJ did find that there were discrepancies. This finding is clearly supported by the record because, as shown above, the treatment dates shown on Dr. Totani's records are inconsistent with the treatment dates Dr. Totani wrote on the agency forms. Also, Dr. Totani's treatment records establish that aside from managing plaintiff's prescription medication, he did not provide any treatment, examination or objective medical testing as a foundation for his

opinion. The boxes checked by Dr. Totani on the agency questionnaires are merely his conclusory opinions. The Tenth Circuit has held that a treating physician's opinion must be given substantial weight "unless good cause is shown to the contrary." Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988) (citing Frey v. Bowen, 816 F.2d at 513). "[A] treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence." Id. In this case, the Court finds that Dr. Totani's opinion was brief, conclusory and unsupported by medical evidence and, as such, was properly rejected by the ALJ.

Plaintiff argues that Dr. Totani's opinion was consistent with those of the agency physicians. Plaintiff cites the opinion of Thurma Fiegel, M.D. [R. 176]. The Court disagrees. Dr. Fiegal's opinion is consistent with the RFC assessment as determined by the ALJ. Dr. Fiegal determined that plaintiff could occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds, stand and walk two hours in an 8-hour day, sit about six hours in an 8-hour day, unlimited push and pull and occasionally climbing, stooping, kneeling, crouching and crawling. Dr. Fiegal opined that plaintiff could perform sedentary work, limited by "no overhead reaching or repetive (sic) movements of the L shoulder/arm/hand. . ." He also determined that "[p]ain does not further affect the RFC." [R. 177].

Plaintiff contends that Dr. Totani's opinion was consistent with that of David Wiegman, M.D. However, the record shows that, aside from evaluating plaintiff's range of motion and grip strength, Dr. Wiegman did not provide an opinion as to whether plaintiff had the capability of performing sedentary work.[6] Plaintiff also relies on the assessment of Kenneth Trinidad, D.O. who

---

[6] Dr. Weigman's opinion focused on plaintiff's range of motion and grip:

arm and leg strength is normal at 5/5 except for his left wrist and arm 4/5. Grip

opined that "in all probability" plaintiff would not be able to reenter the active work force. [R. 109]. The ALJ acknowledged the opinion of Dr. Trinidad, but implicitly found that his assessment was not supported by the record as a whole. [R. 17].

Plaintiff contends the ALJ failed to address each of the six factors enumerated in 20 C.F.R. §§ 404.1527 and 416.927.  See supra p.9.  Because Dr. Totani merely provided his conclusory opinion, the ALJ was not required to provide a factor-by-factor analysis of his opinion. In Lierz v. Astrue, 2009 WL 1956477 (D. Kan) (unpublished), the court stated, "the court will not require a specific factor-by-factor evaluation of the evidence and the opinions so long as the 'ALJ's decision is specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Id. (citing Oldman v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007)).  In Oldman the Tenth Circuit held:

> [W]ell-supported medical evidence, satisfies the requirement that the ALJ's decision be 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Waktins, 350 F.3d at 1300. That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaning review. Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. For one thing, as the Commissioner has recognized, '[n]ot every factor for weighing opinion evidence will apply in every case.'

---

strength is normal on the right but decreased 4/5 on the left. His shoulder range of motion is decreased on abduction to approximately 90 degrees on the left and 100 degrees on the right. His wrist range of motion decreased on the left at 30 degrees in the palmer hinge motion and dorsal hinge motion. Back range of motion is normal with significant pain on all movements and neck range of motion is normal with mild pain. There is no joint swelling, erythema, effusion, or deformity noted. He is able to stand, sit, and get on to the examination table without difficulty. He is able to manipulate small objects better with his right hand.

[R. 119-120].

Id. The ALJ clearly set forth the weight he gave to the opinion of Dr. Totani and the reasons for rejecting his opinion. The ALJ concluded:

> In sum, the above residual functional capacity assessment is supported by the consultative internal medicine examinations and the psychological evaluation. These are consistent with the records as a whole. The residual functional assessment from State agency also supports the undersigned's residual functional capacity.

[R. 20]. Thus, the Court finds that the ALJ complied with the requirements of 20 C.F.R. §§ 404.1527 and 416.927.

## Conclusion

The Court finds that there is substantial evidence in the record to support the ALJ's decision. The Court further finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 3rd day of February, 2010.

T. Lane Wilson
United States Magistrate Judge